UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No.: 16-CR-10331-LTS |
| v. | ) | |
| ANDREW R. BISIGNANI | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States, through undersigned counsel, respectfully requests that the Court sentence defendant Andrew Bisignani to a term of imprisonment of 12 months and 1 day, to be followed by 12 months of supervised release. The United States further requests that the Court impose the following financial penalties: (1) a mandatory $400 special assessment and (2) a fine of $177,268.63. As set forth below, the government's custody recommendation falls at the low end of the applicable advisory United States Sentencing Guidelines (USSG) range. As set forth below, it is a sentence that is sufficient but not greater than necessary to adequately address the factors to be considered in imposing sentence on Bisignani, as set forth in 18 U.S.C. § 3553(a).

## I. Background

The salient facts are set forth in the Presentence Investigation Report (the PSR) and are not in dispute. Andrew Bisignani was a public official for over thirty years – serving in various positions of financial responsibility for the City of Revere (circa 1978-2003), as the Town Manager for the Town of Saugus (2003-2012), and as the Town Administrator for the Town of Nahant (2012-2014). In December 2014, he was indicted in Essex County Superior Court on procurement fraud and evidence tampering charges arising out of his tenures in Saugus and Nahant; those charges are still pending and trial is scheduled for April 17, 2017.

During the investigation resulting in the Essex County charges and after the Massachusetts State Police ("MSP") had seized copies of Bisignani's tax returns, Bisignani filed amended Massachusetts state and federal income tax returns for the years 2010 through 2013 reporting additional income of over $300,000 that he claimed was "inadvertently omitted" from his original income tax returns. A subsequent Internal Revenue Service ("IRS") investigation revealed that Bisignani admittedly omitted $375,956 in income from his originally filed 2009, 2010, 2011, 2012 and 2013 federal tax returns. The unreported income was derived from two sources: (1) rental income payments Bisignani received from tenants of buildings he owned; and (2) interest/loan income Bisignani received from multiple, short-term loans he made to other individuals.

While the interest and loan income Bisignani omitted was significant and is described more fully in the PSR, it is the omitted rental income and the method Bisignani employed to hide such income that bears directly on the sentencing decision the Court must make. The majority of Bisignani's unreported income consists of rental income payments he received from tenants living in three, multi-unit, rental properties owned by Bisignani and located in Revere, Massachusetts. In each of the years from 2009 through 2013, Bisignani ***failed to report at least thirty percent of the rental income he received***.

A significant amount of the unreported rental income was paid to Bisignani in the form of checks. Instead of depositing those checks into his bank accounts, Bisignani concealed his receipt of the unreported rental income by regularly cashing a portion of the rental income checks he received from his tenants each month. Bisignani then used a significant portion of the proceeds from the cashed rental checks to purchase money orders, which he used to pay his

yacht club membership, Florida condo association fees, monthly credit card bills, Mercedes Benz car payments and other personal expenses.

Ultimately, Bisignani evaded federal income taxes totaling $157,400.36 and state income taxes totaling $19,868.27 by underreporting his income for the 2009 through 2013 years.

## II. USSG Calculation

The parties are in agreement that the base offense level and adjusted offense level under the United States Sentencing Guidelines ("USSG") is 16, as set forth in the PSR (¶¶ 25-31). *See* USSG §§ 2T4.1(F) and 2T1.1(a)(1). The parties also agree that Bisignani's offense level should be decreased by three levels based on his acceptance of responsibility. *See* PSR ¶¶ 33, 34; USSG §§ 3E1.1(a) and 3E1.1(b). Bisignani's total offense level is therefore 13, and the applicable USSG range is 12 months to 18 months (Zone C).

## III. Sentencing Factors Under 18 U.S.C. § 3553

As grounds for his request for a probationary sentence well outside of the applicable USSG range, Bisignani points to his purported history of generosity, his "extraordinary" acceptance of responsibility, his emotional and physical health, and the need to avoid unwarranted sentencing disparities. It is the government's position that none of these factors – particularly when considered along with the other 18 U.S.C. § 3553 sentencing factors – warrants the below-Guidelines, probationary sentence that Bisignani requests.

### A. Nature and circumstances of the offense

Bisignani pled guilty to four counts of filing false tax returns, and he has admitted that he failed to report all of his income on his federal tax returns for at least five years. Year after year – in 2009, 2010, 2011, 2012, 2013 – Bisignani skimmed rental income from his tenants, turned it into money orders, and used them to pay for yacht club memberships and luxury car payments while lying about his income to the IRS. Bisignani committed crimes, not mistakes, and they

were not crimes of passion, addiction, or desperation. In fact, Bisignani never struggled with poverty or addiction, and he and his wife have ***over $5 million in assets*** and he purportedly had money to give to various friends, family and strangers, as set forth in the letters submitted on his behalf. These were crimes of calculation, driven by greed. There is nothing about Bisignani's deliberate violations of the federal tax code that brings his crimes outside the heartland of the applicable USSG.

B. Bisignani's History and Characteristics

Bisignani and his many supporters have not given this Court any reason why he should be treated differently than any other tax evader. Bisignani's brief and the letters submitted therewith paint a picture of a good brother, husband, friend and citizen. Yet many white collar criminals lead double lives. Indeed, it was easy for Bisignani to be generous with his money; he was not paying taxes on all of his income and giving away some of the cash he hid from the IRS[1] helped to conceal his crimes. The fact that Bisignani used a portion of his money to help others does not justify or erase his criminal choice to hide another portion of his money from the IRS and state tax authorities, year after year after year. Sentencing Bisignani to a below-Guidelines probationary sentence based on his alleged history of financial generosity would send the message that criminals can buy their way out of a prison sentence by giving away some of their criminal proceeds to those who chose not to defraud the IRS and struggle to make ends meet. Likewise, using Bisignani's purported good deeds as a basis for such a departure sends the message that criminals can avoid prison if only they give back to their communities while they commit their crimes.

---

[1] While it is not possible to trace all of his hidden income, Bisignani gave at least some of it (including $2,500 worth of money orders) to the two sisters who describe him as generous with his time and money.

C. Deterrence

As is true with most tax offenders, there is perhaps a minimal need for a sentence to provide specific deterrence for Bisignani. However, it is the general deterrent effect of punishment which requires a sentence of imprisonment in tax cases. The income tax system in the United States is grounded in voluntary compliance, and taxpayers must know that they will be punished according to the law if they lie to avoid their tax obligations. The embarrassment and shame which Bisignani will suffer with a tax conviction are not enough, the public must know that if you violate the tax laws, you go to prison. If the price of lying about your income on your tax returns is to just pay back the money and continue on with your professional and personal life, the deterrent effect is questionable.

D. Need to Avoid Unwarranted Sentencing Disparities

In his sentencing memorandum, Bisignani argues that a sentence of probation is consistent with other recent sentences for tax crimes which occurred within the last year. However, a closer look at some of the sentences Bisignani cited reveals that a sentence of probation would in fact be disparate.

For example, Bisignani omitted a critical distinction between his circumstances and those of the defendant in *United States v. Molloy*, 16-cr-10212-GAO. Specifically, the government in *Molloy* moved for a 55% downward departure from the otherwise applicable sentencing range pursuant to USSG § 5K1.1(a), based on the defendant's substantial assistance with other investigations. *See Molloy*, 16-cr-10210-GAO, Docket No. 16, at 4. With the substantial assistance reduction, the low end of Molloy's applicable USSG range was between eight and nine months, falling between Zones A and B of the USSG Sentencing Table. While a probationary sentence is authorized for Guidelines ranges in Zones A and B, the Guidelines do

not authorize a sentence of probation where, as in Bisignani's case, the USSG range is within Zone C. USSG § 5B1.1, application note 2.

In addition, the prison sentences handed down by Judge Matroianni and Judge Hillman, respectively, in *United States v. Dimitriou* and *United States v. Lowe* actually support the government's position that Bisignani should not be sentenced to a term of probation. The defendants in *Dimitriou* and *Lowe* were both described as good and caring family men who, like Bisignani, purportedly contributed much to their communities. *See United States v. Dimitriou*, 3:16-cr-30012-MGM, Docket No. 16, at 2-3 (describing defendant as self-made man and good and devoted son, husband and father; stating that defendant contributed community meals and nativity set to parish, supported many local organizations and offered employment opportunities to at-risk youth); *United States v. Lowe*, 3:16-cr-30022-TSH, Docket No. 17, at 4-5 (describing defendant as good, family man who served six years in the United States Marines and provided lower-cost or free accounting work to not-for-profit companies). Bisignani's case is distinguishable from *Dimitriou* and *Lowe* only by the fact that Bisignani enjoyed a position of public trust, and was looked up to by members of the communities he served, as is evident from the many letters in his support. Instead of earning that trust, Bisignani cashed his rent checks, bought money orders to hide the cash, and used those money orders to support the high life he had created for himself.

By citing only to tax cases with sentencings in the last year, Bisignani avoided having to distinguish *United States v. Kerasiotes*, 14-CR-10200-WGY. In fact, the two cases are remarkably similar. Like Bisignani, James J. Kerasiotes had been a public servant, ultimately serving as the Secretary of Transportation for Massachusetts from 1996 through 2000. Like Bisignani, Kerasiotes pled guilty to an information charging him with filing false personal tax

returns. And like Bisignani, Kerasiotes submitted scores of letters attesting to his being a good public servant, husband, son, father and friend, and to his selflessness and generosity. *See United States v. Kerasiotes*, 14-CR-10200-WGY, Docket No. 33. Despite Kerasiotes' history and characteristics, in February 2015, Judge Young sentenced Kerasiotes to six months in prison, to be followed by twelve months of supervised release, the first four months of which were to be served in home detention. *Id.*, Docket No. 39. Explaining his sentence, Judge Young stated:

> This is truly -- this has truly the elements of a Shakespearean tragedy. The fact that you sit here today a convicted felon, a liar, who has lied on one of the basic aspects of contributing to society, does not, in this Court's mind, take away from the fact that you have rendered distinguished public service to the people of this Commonwealth, that in the course of a long and distinguished career of public service you have engaged the respect, and I will say the love and affection of people in public and private walks of life that has permitted you to accomplish much, of which you have every right to be proud, and which the rest of us and our children will have the benefit for years to come.
>
> But there must be a sentence to prison. Our tax code is largely voluntary. It must be that those who lie intentionally on their tax returns hear the jail doors close behind them. This sentence would have been longer but for the remarkable public service that you have contributed to us all. It is a fair and a just sentence.

*Id.*, Docket No. 39-1. While in many respects the two cases are similar, Bisignani's conduct was more egregious. Specifically, Kerasiotes was charged with only two counts of filing false tax returns, compared to Bisignani's four counts. Moreover, the tax loss attributable to Kerasiotes was just over $30,000, almost six times less than the loss attributable to Bisignani's crimes. Clearly a sentence of a year and a day imprisonment would not be disparate from other tax cases in this District, but a sentence of probation would be inconsistent with similar cases.

E. <u>Acceptance of Responsibility</u>

Bisignani also touts his "complete and early acceptance of responsibility" as being "much greater than the typical defendant" because he filed his tax returns before the IRS began its

investigation and because he entered into a plea agreement promptly. Bisignani's claim that his early plea to an information warrants a downward departure is due short shrift because it is already accounted for in the three-level reduction of Bisignani's offense level for acceptance of responsibility. *See* PSR ¶¶ 33, 34; USSG §§ 3E1.1(a) and 3E1.1(b). Likewise, there is nothing extraordinary about Bisignani's filing amended tax returns before the IRS began its investigation. In fact, the MSP and Essex County District Attorney's Office were investigating Bisignani for the procurement fraud offenses on which he was ultimately indicted. Realizing that his failure to report all of his legitimate income on his tax returns (and his purchase of money orders with cash) might indicate that he benefitted financially from the alleged procurement fraud, Bisignani chose the lesser of two evils: coming clean about his false tax returns rather than risk any implication that he pocketed money from the contractors to whom he allegedly steered town contracts. Bisignani's Hobson's choice does not warrant his requested downward departure.

F. <u>Medical Condition</u>

Bisignani is 70 years old and suffers physical maladies common with age but not present in any unusual degree which distinguishes this case from typical cases covered by the USSG. Indeed, Bisignani was physically able to clear snow from his in-laws' steps and cars in January 2017, despite his cervical spinal stenosis and knee and rotator cuff issues. *See* Docket No. 91-, at 5. Likewise, there is nothing about Bisignani's mental state which sets him apart from other defendants troubled by the prospect of going to jail, despite his psychologist's unsupported "belief" that "incarceration would have an immeasurable impact on his physical and mental health." The United States Bureau of Prisons handles many prisoners in their seventies and older, and is well equipped to handle Bisignani's physical and emotional ailments.

## IV. Conclusion

For the reasons set forth herein, the government requests that the Court sentence Bisignani to a term of imprisonment of 12 months and 1 day, to be followed by 12 months of supervised release. The United States further requests that the Court impose the following financial penalties: (1) a mandatory $400 special assessment and (2) a fine of $177,268.63.

Dated: February 7, 2017

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By: /s/ Kristina E. Barclay
KRISTINA E. BARCLAY
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that, on the date below, this document was filed through ECF system which sends copies electronically to the registered participants.

/s/ Kristina E. Barclay
KRISTINA E. BARCLAY
Assistant U.S. Attorney

Dated: February 7, 2017